IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.                                                                    19-CR-31

KEVIN LEONARDO VALENZUELA SUERO,

               Defendant.

---

## THE GOVERNMENT'S RESPONSE TO THE DEFENDANT'S SENTENCING MEMORANDUM

**THE UNITED STATES OF AMERICA**, through its attorneys, Trini E. Ross, United States Attorney for the Western District of New York, and Douglas A. C. Penrose, Assistant United States Attorney, of counsel, respectfully files this response to the defendant's Sentencing Memorandum, (Dkt. 117), and in support of a guideline sentence.

## PRELIMINARY STATEMENT

During a routine search conducted at the U.S.-Canadian border, law enforcement discovered numerous videos of child pornography on the defendant's cellphone. It would later be determined that the defendant's phone contained 16 unique videos of child pornography, *i.e.*, videos memorializing the sexual abuse of children. One such video showed the rape of a prepubescent minor, her face contorted in pain. Not only did the defendant watch these videos "numerous times," he also distributed them to others. The defendant, through his consumption of these horrific videos, contributed to the demand for them. Through his

distribution of them, he facilitated the widespread dissemination of them. This conduct fully justifies a guideline sentence of 60 months' incarceration.

Defense counsel spends a great deal of time and effort discussing the defendant's age as it relates to his culpability and the immigration consequences that the defendant might suffer as a result of his conviction and sentence. Both of these are certainly factors that the Court can and should consider when fashioning an appropriate sentence. However, both are already accounted for by virtue of the defendant's pleading to a crime that has a statutory maximum penalty of five years. In doing so, the defendant's guideline range was reduced from nearly 16 years at the high end down to 5 years. As discussed further below, this not only had the obvious effect of reducing the guideline range and maximum term of incarceration, but it also greatly reduced the likelihood that the defendant would suffer any immigration consequences as a result of his conviction.

In light of the defendant's conduct, and taking into account all of the factors set forth in Section 3553(a), the government believes that a guideline sentence of 60 months' incarceration is sufficient but not greater than necessary.

## RELEVANT PROCEDURAL BACKGROUND

On February 5, 2019, a grand jury sitting in the Western District of New York returned an indictment against the defendant, charging him with violations of Title 18, United States Code, Sections 2252A(a)(1) (transportation of child pornography) and 2252A(a)(5)(B) (possession of child pornography involving a prepubescent minor).

On July 21, 2022, the defendant pled guilty to a one count Superseding Information charging him with violation of Title 18, United States Code, Section 1462 (transportation of

obscene material in commerce).  The plea agreement calculated a total offense level of 30 and a criminal history category of I, which would have resulted in a guideline range of 96-121 months incarceration, but because of the statutory maximum penalty, was reduced to a term of imprisonment of 60 months. (Dkt. 97 at ¶ 11.) Pursuant to the plea agreement, the parties agreed that they would not ask for a non-Guideline sentence. (Id. at ¶ 12.) The Presentence Investigation Report ("PSR") calculated a total offense level of 34 and criminal history category of I, which corresponds with a guideline imprisonment range of 151 to 188 months, which was then reduced to 60 months because of the statutory maximum penalty. (Dkt. 103 at ¶ 54.)

## STATEMENT OF FACTS

The government concurs with and relies on the statement of facts outlined in the PSR at paragraphs 13 through 22. (Dkt. 103.)

## DISCUSSION

I.   **In Considering the Section 3553(a) Factors, the Court Should Conclude That a Guideline Sentence Provides the Proper Punishment for the Offense of Conviction.**

The government believes that a guideline sentence of 60 months' incarceration provides for a punishment that is sufficient but not greater than necessary in light of the defendant's conduct. The United States recognizes that since *United States v. Booker*, 543 U.S. 220 (2005), the sentencing guidelines are advisory rather than statutorily mandated. However, "advisory" does not mean irrelevant. The Court is not "free to ignore the Guidelines, or to treat them merely as a 'body of casual advice.'" *United States v. Cavera*, 550 F.3d 180, 189 (2d

3

Cir. 2008) (*en banc*), *quoting United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005). Here, if the defendant had pled guilty to either of the charges contained in the indictment—for which there is certainly a factual basis—the guideline range would have been either 96 to 121 months as calculated in the plea agreement or 151 to 188 months as calculated in the PSR. However, because the government offered the defendant a plea to transportation of obscenity, which carries with it a statutory maximum penalty of five years, the guideline range was reduced to 60 months. Although 60 months is the guideline range, and that is the sentence the government is requesting, it is still relevant that but for the statutory maximum penalty for the offense of conviction, the guideline sentence would have been far higher than what the defendant currently faces.

After considering the Guidelines, the Court must then fashion a sentence that is consistent with the factors detailed in Title 18, United States Code, Section 3553(a). Under Section 3553(a), the Court must consider the nature and circumstances of the offense as well as the history and characteristics of the defendant. 18 U.S.C. § 3553(a).  It must then fashion a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, and protects the public. Id. The sentencing court must also consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." Id. The United States contends that in this case, a guideline is reasonable and appropriate in light of the factors set forth in Section 3553(a).

A.  *The Nature and Circumstances of the Offense Warrant a Guideline Sentence.*

The defendant was arrested on January 4, 2019 when a search of his cellphone conducted when he was crossing from Canada into the United States identified child pornography, including numerous videos of prepubescent females. (Dkt. 103 at ¶¶ 14-22; Dkt. 97 at ¶ 4.b.) Examples of the child pornography found on the defendant's phone include a video showing a prepubescent female being anally penetrated by an adult male penis and another video showing a minor female being vaginally penetrated by an adult male penis. (Dkt. 103 at ¶ 93.) One of the videos on the defendant's phone that involved a prepubescent female shows the victim's face visibly contorted in pain as she is being anally penetrated. (Id. at ¶ 20.) The defendant acknowledged that he watched these videos "numerous times." (Id. at ¶ 21.) In total, 16 unique videos depicting child pornography were found on the defendant's phone. (Id. at ¶ 22.) The defendant distributed at least three of these videos to at least 20 other individuals using the WhatsApp group messaging application. (Id.)

The defendant's conduct necessitates a prolonged period of incarceration. As noted by the PSR, child pornography depicts the rape of real children by sex offenders. (Dkt. 103 at ¶ 23.) As the Third Circuit has aptly commented, "[c]hildren are exploited, molested, and raped for the prurient pleasure of [the defendant] and others who support suppliers of child pornography . . . . [The children's] injuries and the taking of their innocence are all too real." *United States v. Goff*, 501 F.3d 250, 259 (3d Cir. 2007). While the defendant was not involved in the initial sexual abuse of these victims, he helped create the market for their victimization by possessing the memorialization of their abuse. The defendant also multiplied the harm by distributing the child pornography to others. *See id.* ("The simple fact that the [child pornography] images have been disseminated perpetuates the abuse initiated by the producer

of the materials"); *United States v. Reingold*, 731 F.3d 204, 216 (2d Cir. 2013) (holding that the harm caused by the production of child pornography "is then exacerbated by the circulation, often for years after the fact, of a graphic record of the child's exploitation and abuse").

Taken together, the nature and circumstances of the defendant's conduct fully justifies a sentence of 60 months.

B. *The History and Characteristics of the Defendant Justify a 60 Month Sentence.*

The government believes that the defendant's age at the time of the offense and the potential immigration consequences that he may face as a result of his conviction support a guideline sentence. In the first instance, the government agrees with defense counsel that age can be considered by the Court when fashioning an appropriate sentence. *See, e.g.*, *United States v. Ramsey*, 538 F. Supp. 3d 407, 415-17 (S.D.N.Y. 2021) (discussing cases that address a defendant's age as it relates to sentencing). Likewise, the government agrees with defense counsel that in the Second Circuit, a sentencing court may consider collateral consequences, including immigration consequences, that a defendant may face as a result of the sentence imposed. *See, e.g.*, *United States v. Thavaraja*, 740 F.3d 253, 262-63 (2d Cir. 2014) ("a district court may take into account the uncertainties presented by the prospect of removal proceedings and the impact deportation will have on the defendant and his family"); *but see United States v. Misquitta*, 568 F. App'x 154, 158 (3d Cir. 2014) ("multiple circuits have held that a district court is not permitted to consider [the possibility of deportation]" when fashioning a sentence). Where the government and defense counsel differ, however, is the weight that these factors should be given in this specific case.

1.  The Defendant's Age Is a Relevant, But Not Compelling Factor.

A significant portion of the defendant's sentencing memorandum is devoted to the fact that the defendant was 19 at the time of the offense and the scientific research showing that an individual's brain at this age—and specifically some of the components responsible for executive function—is not fully developed. (Dkt. 117 at 12-16.) The government does not dispute the scientific research presented by defense counsel or as discussed in *United States v. Ramsey*, on which defense counsel heavily relies. However, neither the scientific research nor *Ramsey* support a blanket statement that the adolescent mind is inherently worse at making decisions than that of an adult. Instead, the research distinguishes between instances of deliberative decisions ("cold cognition"), where adolescents reason about as well as adults, and decisions made in a high-pressure, time-sensitive, and emotional context ("hot cognition"), where adolescents tend to make riskier decisions. *See Ramsey*, 538 F. Supp. 3d at 419-20. *Ramsey* also took into account the Supreme Court's finding that "juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure." *Id.* at 420 (citing *Roper v. Simmons*, 543 U.S. 551, 569 (2005)). Defense counsel argues that the defendant's possession, retention, viewing on multiple occasions, and distribution of child pornography was an instance of "hot cognition" made in a "peer charged situation." (Dkt. 117 at 14.) The government disagrees.

*Ramsey* sets forth the type of situation that is properly considered an instance of "hot cognition" where the adolescent mind might be more prone to make poor decisions, particularly when simultaneously being subjected to peer pressure. In *Ramsey*, the defendant, who came from a broken family and was bullied at school, joined a gang at age 17 in order to feel safe and socially accepted. 538 F. App'x at 409-410. The defendant became involved in

selling narcotics for the gang, and eventually he and two of his fellow gang members were ordered by their gang's leader to murder a rival gang leader. *Id.* As a result, he and his two fellow gang members attempted to kill the rival gang leader and in doing so fired their weapons into a crowd, fatally wounding two bystanders. *Id.* at 409. The defendant was convicted of murder in aid of racketeering and the Court imposed the then-mandatory sentence of life imprisonment. *Id.* at 409-410. Having already served several decades in prison, the defendant later sought a reduction in sentence pursuant to the First Step Act. *Id.* at 414. The court in *Ramsey* found that while the decision to murder a rival gang leader contained elements of "cold cognition," the actual choice to fire into a crowd in an attempt to do so "ha[d] all the hallmarks of adolescent crime: a split-second, hot-headed choice made in the presence of peers." *Id.* at 424.

Other than the age of the defendant, the facts of *Ramsey* could not be more starkly different than those of the instant case. The defendant in *Ramsey* was forced to make a split-second decision in the heat of the moment and surrounded by his fellow gang members. In contrast, the defendant here had no such pressure. The defendant could have deleted the child pornography on his phone at any point. He chose not to do so. Instead, he chose to watch the videos depicting the sexual abuse of children numerous times. And he distributed these videos to others. These decisions were not made in a high pressure or time-sensitive context. Nor were these decisions made in a "peer charged situation." The defendant possessed, viewed, and distributed child pornography on his phone. There is no evidence that he did any of this in the presence of others or that anyone else was even aware of the defendant's conduct. The defendant received the child pornography through the WhatsApp messaging application. There is no evidence that the other members of this group chat were somehow pressuring the

defendant to receive, retain, and distribute the child pornography. There is no evidence that he even knew the other members of the group chat. Therefore, the decisions that the defendant made—and which form the basis for the offense conduct—were not the product of "hot cognition" in a peer charged situation. Thus, any infirmities of the adolescent mind have little bearing on the case at hand. In this regard at least, the defendant should be treated as the adult he was at the time of conviction.

2. The Plea Agreement Minimized the Immigration Consequences That the Defendant Will Face As a Result of His Conviction.

In trying to resolve this case, one of the defendant's principal concerns was the immigration consequences that a conviction would have. More specifically, the defendant was concerned about the possibility of being removed from Canada to the Dominican Republic, a country he left when he was 16 and where he no longer has many friends or family members. It was for this reason that a previous plea offer made by the government, which would have required the defendant plead guilty to possession of child pornography involving a prepubescent minor, was unacceptable. To be clear, this prior offer is the "plea agreement" referenced in the letter attached to the defendant's sentencing memorandum discussing the potential immigration consequences of conviction. (Dkt. 117-1 at 6.) The letter does not address the plea agreement that the defendant actually entered into, which is a crucial distinction. As discussed in the letter, a plea to possession of child pornography would have been considered "serious criminality" under Canadian law thus would have subjected the defendant to almost certain removal from Canada. (Id.) But this is not the case under the current plea. Because the offense of conviction has a maximum penalty of only five years and because any term of imprisonment would not be imposed in Canada, it is not considered

"serious criminality." As a result, the only immigration consequence that the defendant might suffer is the potential loss of his permanent residence status if he is outside of Canada for more than two of the prior five years. (Dkt. 117 at 23.) But even if the Canadian government sought to pursue removal on such grounds, the defendant would have the right to appeal. (Id.)  Thus, the only concrete consequence of the defendant's conviction from an immigration perspective is his likely inadmissibility to enter the United States. The government does not mean to minimize this consequence, particularly in light of the fact that the defendant's mother resides in this country, but it is a consequence that many defendants face as a result of convictions for crimes that are far less serious. As a result, the government does not believe that the possible immigration consequences for the defendant that could result from the defendant's plea in this case should be a basis for a lower sentence.

## CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court impose a guideline sentence of 60 months.


DATED:  Buffalo, New York, May 3, 3023.


TRINI E. ROSS
United States Attorney

BY:     s/DOUGLAS A. C. PENROSE
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716-843-5868
Douglas.Penrose@usdoj.gov